## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| TARIQ A. SMITH, | |
|       Plaintiff, | |
| v. | Case No: 4:22-cv-03681 |
| 700 PLUS CREDIT, LLC, | |
|       Defendant. | |

## <u>COMPLAINT</u>

**NOW COMES** Tariq A. Smith ("Plaintiff") by and through his undersigned counsel, complaining as to the conduct of 700 Plus Credit, LLC, ("Defendant") as follows:

### NATURE OF THE ACTION

1.  Plaintiff brings this action seeking redress for Defendant's violations pursuant to the Credit Repair Organizations Act ("CROA") under 15 U.S.C. § 1679 *et seq.,* the Texas Debt Management Services Act ("TCDMSA") under Tex. Fin. Code § 394.201 *et seq.,* as well as for claims of Fraudulent Misrepresentation, and Negligence, stemming from Defendant's unlawful conduct.

### JURISDICTION AND VENUE

2.  Subject matter jurisdiction is conferred upon this Court by the CROA, 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. §1367.

3.  Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) as a substantial part of the events or omissions giving rise to Plaintiff's claims against Defendant occurred in the Southern

District of Texas, Defendant is domiciled in the Southern District of Texas, and Plaintiff resides in the Southern District of Texas

PARTIES

4.   Plaintiff is a consumer over 18 years of age residing in Stafford, Texas.

5.   Defendant is a credit repair organization that offers its customers the ability to eliminate and resolve credit reporting information through Defendant's credit repair services. Defendant is incorporated under the laws of the state of Nevada with its principal place of business located at 2616 S Loop W, Suite 435, Houston, Texas 77054.

6.   Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

FACTS SUPPORTING CAUSES OF ACTION

7.   In June 2027, Plaintiff had a number of debts which were impacting his credit, prompting him to begin looking for companies who may be able to assist him in improving his credit and resolving his obligations.

8.   After diligent research, Plaintiff happened upon Defendant due to its representations that it could help consumers improve their creditworthiness.

9.   As such, Plaintiff spoke with Defendant representative Vanessa Donis who advised Plaintiff that it would be able to remove negative information from his credit profile with major credit bureaus and bring his score above 700.

10.  It was further represented to Plaintiff that, following his successful completion of Defendant's program and after paying all necessary fees for Defendant's services, Defendant

would be able to provide additional credit services designed to further improve Plaintiff's credit history.

11.   On June 26, 2017, Plaintiff entered into an agreement in connection with Defendant's credit repair services. The agreement stated that Plaintiff will be responsible for paying a fee of $949.99 to Defendant within 180 days of execution of the agreement.

12.   As part of Defendant's services, Plaintiff paid Defendant an initial down payment fee of $10 and an additional $939.99 due on October 20, 2017.

13.   After months of making payments and informing Defendant of the inaccurate information which he wanted addressed through Defendant's dispute process, none of the inaccurate information had been removed from Plaintiff's credit reports.

14.   Specifically, a representative of Defendant promised Plaintiff that Defendant would "get his score to over 700 through its program."

15.   Relying upon Defendant's representations regarding the nature and efficacy of its services, Plaintiff paid off the full amount agreed upon in the contract.

16.   Defendant's conduct in representing that it could get his score to 700 effectively dispute and remove Plaintiff's information on his credit reports was inherently misleading and deceptive.

17.   Plaintiff continued to work with Defendant on a month to month basis into 2018 following their initial agreement. However, Plaintiff grew tiresome from Defendants its failure to uphold its promises.

18.   Eventually, after making payments to Defendant, Plaintiff became extremely frustrated and distressed that he had been making payments yet not seeing any results on the part of Defendant.

19.  Defendant's failure to sufficiently get any of the inaccurate information removed from Plaintiff's credit reports underscores the generally deceptive manner in which Defendant held out the efficacy of its services to Plaintiff.

20.  Furthermore, it was deceptive for Defendant to represent the effectiveness of its services given that the credit reporting agencies are under no obligation to respond to the disputes submitted by Defendant or Credit Repair Organizations in general.

21.  Pursuant to 12 C.R.F. §1022.43(b)(2), the credit reporting agencies are under no obligation to respond to disputes submitted by credit repair organizations like Defendant.

22.  As such, Defendant misrepresented the nature of its services and that the credit reporting agencies would be obligated to respond to Defendant's disputes in a manner triggering the credit reporting agencies' investigatory obligations.

23.  Even more, Defendant explicitly guaranteed results that Plaintiff would be at a 700 credit score.

24.  Ultimately, due to the fact that no positive changes occurred to Plaintiff's credit files, Plaintiff terminated his services with Defendant.

25.  Following Plaintiff's termination of his relationship with Defendant, Plaintiff spent months attempting to dig himself out of the hole created by Defendant's deficient provision of credit repair services.

26.  Plaintiff suffered severe emotional distress, as well as significant out of pocket expenses and persistently depressed credit scores as a result of Defendant's deceptive and misleading conduct.

27.  Frustrated, distressed, and concerned over Defendant's conduct, Plaintiff spoke with the undersigned regarding his rights.

28.  Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to, emotional distress, aggravation, mental anguish, lost time, out of pocket expenses, pecuniary loss stemming from the payments made to Defendant, denial of the benefit of his bargain, making payments to Defendant after relying on false and deceptive representations, as well as numerous violations of his federally protected interests to be free from deceptive and misleading conduct on the part of purported credit repair organizations.

## COUNT I – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

29. Plaintiff repeats and realleges paragraphs 1 through 28 as though fully set forth herein.

30. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA.

31. Defendant is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit. Defendant's contract explicitly states that Plaintiff was retaining Defendant to help "dispute information to fix inaccuracies or errors, and/or verify information is valid, complete, verifiable, and reporting 100% accurately"– and, as such, illustrates that Defendant's services are designed to improve a consumer's credit history as it would result in Plaintiff being able to resolve obligations that would otherwise go unresolved, which would present a benefit to Plaintiff's credit history when compared to the alternative of having debts that would otherwise go unresolved.

### a. Violations of CROA § 1679b(a)

32. The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

33. Defendant violated the above referenced provisions of the CROA through its misrepresentations and deception as to the nature of the credit repair services it would provide Plaintiff. Defendant represented, orally with Plaintiff, that it would increase Plaintiff's credit score to over 700.

34. Additionally, Defendant violated the above provisions of the CROA when it deceptively and misleadingly gave Plaintiff by promising him that it would improve his creditworthiness to 700. Defendant's representations were designed to convince Plaintiff that Defendant was actively working on resolving issues in his credit files; however, Defendant failed to perform the services it agreed to perform for Plaintiff.

### b. Violations of CROA § 1679b(b)

35. The CROA, pursuant to 15 U.S.C. § 1679b(b), provides that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

36. Defendant violated § 1679b(b) through its charging and receiving of money for services agreed to perform before such services are fully performed. Plaintiff's down payment fee and

6

subsequent payments went towards various legal and other fees which were retained by Defendant prior to performing services or which were in connection with services Defendant never performed.

### c.  Violation of CROA § 1679c

37. The CROA, pursuant to 15 U.S.C. § 1679c, outlines various disclosures that CROs must provide to consumers prior to entering into contracts with consumers.

38. Defendant violated § 1679c through its complete failure to provide Plaintiff a copy of the required disclosures.

### d.  Violation of CROA §§ 1679d(4) & 1679e

39. The CROA, pursuant to 15 U.S.C. § 1679d(4), requires credit repair organization to include, in the contract between them and a consumer, "a conspicuous statement in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract, which reads as follows: 'You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract. See the attached notice of cancellation form for an explanation of this right.'" 15 U.S.C. § 1679e further outlines the extent of a consumer's cancellation rights under CROA while requiring such disclosure to be given to consumers in writing.

40.  Defendant violated 15 U.S.C. §§ 1679d(4) & 1679e through its complete failure to provide the above disclosure in immediate proximity to the space reserved for Plaintiff's signature on the contract, as well as its failure to provide the notice of cancellation to Plaintiff.

**WHEREFORE**, Plaintiff, Tariq A. Smith, respectfully requests that this Honorable Judge enter judgment in his favor as follows:

a.  Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b.  Awarding Plaintiff actual damages to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(1);

c.  Awarding Plaintiff punitive damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(2)(A);

d.  Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and,

e.  Awarding any other relief as the Honorable Court deems just and appropriate.

### COUNT II – VIOLATIONS OF THE TEXAS CONSUMER DEBT MANAGEMENT SERVICES ACT

41. Plaintiff restates and realleges paragraphs 1 through 40 as though fully set forth herein.

42. Plaintiff are "consumer[s]" as defined by Tex. Fin. Code § 394.202(4).

43. Defendant is a "provider" of "debt management service" as defined by Tex. Fin. Code §§ 394.202(6) & (10).

44. The TCDMSA's exclusion does not apply here because: (1) upon information and belief, Defendant is not licensed to practice law in the state of Texas; (2) even if it is licensed in the state of Texas, it nevertheless holds itself out to the public as a provider of debt management services or that it is otherwise affiliated with or working on behalf of a provider of debt management services; and (3) Defendant failed to actually perform any of the legal services it represented it would perform for Plaintiff.

### a.  Violations of Tex. Fin. Code §394.207

45. The TCDMSA, pursuant to Tex. Fin. Code § 394.207, provides that "[a] provider may not engage in false or deceptive advertising,"

46. Defendant violated § 394.207 through its deceptive advertising directed towards Plaintiff regarding the nature of the services it would perform for Plaintiff. Defendant advertised that it

would "get his score to over 700," but that representation was proven false through Defendant's subsequent conduct.

**b. Violations of Tex. Fin. Code § 394.209**

47. The TCDMSA, pursuant to Tex. Fin. Code § 394.209, outlines the various requirements of the contracts entered into between debt management providers and consumers. One such requirement includes a statement "that establishment of a debt management plan may impact the consumer's credit rating and credit score **either favorably or unfavorably . . . .**" Tex. Fin. Code § 394.209(b)(7) (*emphasis* added).

48. Defendant violated § 394.209(b)(7) through its failure to include a number of the required disclosures in its contract with Plaintiff, including the disclosure regarding the potential impact of its services on Plaintiff's credit history and rating. Upon information and belief, Defendant intentionally failed to include this language in an effort to avoid the clear application of federal law.

**c. Violations of Tex. Fin. Code § 394.212**

49. The TCDMSA, pursuant to Tex. Fin. Code § 394.212, outlines a number of prohibited practices on the part of providers.

50. Pursuant to § 394.212(a)(8), a provider may not "use an unconscionable means to obtain a contract with a consumer."

51. Defendant violated § 394.212(a)(8) when it unconscionably utilized knowing false representations regarding the nature of its services so as to induce Plaintiff's assent to the contract entered into between the parties.

52. Pursuant to § 394.212(a)(9), a provider may not "engage in an unfair, deceptive, or unconscionable act or practice in connection with a service provided to a consumer."

53. Defendant violated § 394.212(a)(9) through the deceptive and unfair nature of the representations made to Plaintiff and manner in which its services were subsequently provided.

### d. Violations of Tex. Fin. Code § 394.213

54. The TCDSMA, pursuant to Tex. Fin. Code § 394.213, states that a "provider has a duty to a consumer who receives debt management services from the provider to ensure that client money held by the provider is managed properly at all times."

55. Defendant violated § 394.213 through its failure to ensure that Plaintiff's money and payments were being properly managed at all times. Despite Plaintiff making payments to Defendant, Defendant failed to perform the services for which it had been purportedly compensated.

**WHEREFORE**, Plaintiff, Tariq A. Smith, respectfully requests that this Honorable Court enters judgment in his favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages pursuant to Tex. Fin. Code § 394.215(c);

c. Awarding Plaintiff punitive damages pursuant to Tex. Fin. Code § 394.215(c);

d. Enjoin Defendant from further violations of law pursuant to Tex. Fin. Code § 394.215(d);,

e. Awarding Plaintiff's costs and reasonable attorney fees, pursuant to Tex. Fin. Code § 394.215(c); and,

f. Awarding any other relief this Honorable Court deems just and appropriate.

### COUNT III – FRAUDULENT MISREPRESENTATION

56. Plaintiff restate and reallege paragraphs 1 through 55 as though fully set forth herein.

57. In Texas, the elements for a fraudulent misrepresentation claim include: (1) a material misrepresentation; (2) made with knowledge of its falsity or asserted without knowledge of its

truth; (3) made with the intention that it should be acted on by the other party; (4) which the other party relied on; and (5) which caused injury.

58. Defendant engaged in fraudulent misrepresentation through the misrepresentations regarding the nature and efficacy of its services. Defendant misrepresented the credit repair services it would provide Plaintiff. Specifically, Defendant promised Plaintiff that Defendant would "get his score to over 700." Defendant made this representation despite knowing the false and deceptive nature of its representations. Defendant intended that Plaintiff rely on the representations as they were done in an attempt to convince Plaintiff as to the nature and efficacy of Defendant's services. Plaintiff relied upon Defendant's representations to his detriment as he agreed to use Defendant's services, and subsequently make payments, as a direct result of the way in which Defendant held out its services to Plaintiff.

59. As outlined above, Plaintiff was harmed by Defendant's fraudulent misrepresentations.

**WHEREFORE**, Plaintiff, Tariq A. Smith, respectfully requests that this Honorable Court enter judgment in his favor as follows:

a. Enter judgment in Plaintiff's favor and against Defendant;

b. Award Plaintiff his actual damages in an amount to be determined at trial;

c. Award Plaintiff equitable relief, including enjoining Defendant from further violations of law;

d. Award Plaintiff costs and reasonable attorneys' fees; and,

e. Award any other relief this Honorable Court deems equitable and just.

## COUNT IV – NEGLIGENCE

60. Plaintiffs restates and reallege paragraphs 1 through 59 as though fully set forth herein.

61. The elements of a negligence cause of action are: (1) existence of a duty of care owed to the plaintiff by the defendant; (2) a breach of that duty, and (3) an injury proximately caused by that breach.

62. Defendant owed Plaintiff a duty of care to provide its represented financial services in a competent manner. Defendant represented to Plaintiff that it would provide Plaintiff services in association with the services it was agreeing to perform. In so doing, Defendant assumed an extra-contractual duty of care which it owed to Plaintiff to perform such services. Defendant breached that duty of care, both by negligently failing to provide the represented credit repair services. Defendant repeatedly breached its duty to act in Plaintiff's interest, instead bilking Plaintiff out of thousands of dollars in payments for its own benefit.

63. As alleged above, Plaintiff was harmed by Defendant's conduct.

**WHEREFORE**, Plaintiff, Tariq A. Smith, respectfully requests that this Honorable Court enter judgment in his favor as follows:

a.  Enter judgment in Plaintiff's favor and against Defendant;

b.  Award Plaintiff his actual damages in an amount to be determined at trial;

c.  Award Plaintiff equitable relief, including enjoining Defendant from further violations of law;

d.  Award Plaintiff costs and reasonable attorneys' fees; and,

e.  Award any further relief this Honorable Court deems equitable and just.

**Plaintiff demands a trial by Jury.**

Dated: October 25, 2022                         Respectfully submitted,

                                                */s/ Marwan R. Daher*
                                                Marwan Rocco Daher, Esq.
                                                *Counsel for Plaintiff*
                                                Sulaiman Law Group, Ltd.
                                                2500 S. Highland Avenue, Suite 200
                                                Lombard, Illinois 60148
                                                Phone: (630) 575-8180
                                                mdaher@sulaimanlaw.com